**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Secretary, Vermont Agency of
Natural Resources, Plaintiff,    }
}
}      Docket No. 101-6-04 Vtec
v.           }
}
}
John R. Wellman, Respondent.

Emergency Order after Hearing

The Secretary of the Agency of Natural Resources (ANR) is represented by Catherine Gjessing, Esq.; Respondent John R. Wellman represents himself. On June 17, 2004, the Environmental Court approved the issuance of an emergency order under 10 V.S.A. § 8009(a)(3) and V.R.C.P. 76(c), after the presentation of the order to the Court ex parte, upon a finding that the Secretary had made all reasonable efforts to notify Respondent of the presentation of the order to the Court.

The Emergency Order was served upon Respondent, who on June 23, 2004, requested a hearing on the merits of the Emergency Order, which had already been scheduled to be held, if requested, on June 25, 2004.

After a hearing on the record held on June 25, 2004, the Court finds and concludes as follows.

Respondent John R. Wellman owns property located at 3265 Coolidge Highway (Route 5) in the town of Guilford. The property is located on the east side of the road and has a direct driveway onto Route 5. In May and June, 2004, a large detached upright propane tank was located near the edge of the road, in a grassy area somewhat to the north of the vehicular access. Respondent has owned the property since 1974, well before the adoption of the Vermont Wetland Rules in February of 1990. Since 1999 he has been engaged in the raising and training of Alaskan Husky sled dogs at the property, towards the goal of assembling an > Iditarod qualifiable team" capable of qualifying to run in the long-distance Iditarod dog sled race in Alaska.

The property contains a building that was formerly a gasoline station, built in 1949, and now in use as Respondent's residence. The property contains a wetland area, at least some of which was formerly a gravel pit, from which gravel was extracted in the 1920s or 1930s for improvements to Route 5. A portion of the extraction area had been filled in as of the time the gasoline station was constructed, in the general location of the gasoline station building.

Respondent had previously constructed two enclosures on his property for his dogs. He has six additional puppies and planned to build an additional enclosure to house those puppies as they grow older. In mid-May of 2004 he began placing sandy fill in the wetland area to extend the edge of the yard to the rear and to the north side of the building.

On May 21, 2004, an ANR Environmental Enforcement Officer visited Respondent's property, in response to an anonymous telephone report[1] that Respondent had been placing fill in a wetland area. Respondent allowed him to look at and photograph the fill, explained about his plans for the dogs, and attempted to show him a map (in evidence as Respondent's Exhibit D) to support Respondent's position that the wetland area was a former gravel pit. Respondent believed that if the wetland area had originally been manmade, it would not fall into a category of wetlands regulated by the state. Respondent also requested the name of the complainant.

The ANR Environmental Enforcement Officer declined to look at the map, advised Respondent that the area appeared to be a wetland, and explained that the telephone report was anonymous. The ANR Environmental Enforcement Officer did not issue any directive to respondent at that time, since he had to verify with the ANR Wetlands program that the area was in fact a regulated wetland, but he advised Respondent that it could be a problem if he continued to place fill in a wetland. The ANR Environmental Enforcement Officer requested that the ANR Wetlands Ecologist visit Respondent's property as soon as possible, as Respondent had expressed his need to continue constructing the dog pens as soon as possible.

After the Environmental Enforcement Officer left, Respondent placed a sign on the detached propane tank located to the north of the vehicular access. The sign (in evidence as Respondent's Exhibit B) was hand-drawn on a 9" x 12" piece of red construction paper. It contained a tracing of a hand containing the words: " VT ANR" and, next to the hand, contained the words: " Compl[ain]ant Name or Court Order paperwork." By this sign, Respondent intended that no ANR representatives would be allowed on the property until he had been furnished either with the name of the person who had reported his activity to the ANR, or had been provided with a court order requiring ANR access to his property. However, the sign was relatively small and, if it was posted on the propane tank close to the side of the road, would not have been particularly noticeable by someone who had pulled into the driveway.

On May 26, 2004, an Agency of Natural Resources Wetlands Ecologist visited Respondent's property at the request of the Environmental Enforcement Officer, believing the visit to have been requested by Respondent to determine whether the area being filled was or was not a wetland. He did not notice the sign. Respondent declined to talk with the Wetlands Ecologist, who made no observations on the property and immediately left the property. However, the Wetlands Ecologist could see the area of the property behind and to the north of the house where the fill had been placed, and from the vegetation he concluded that it clearly was a wetland. He observed common wetland plants, such as cattails, tamarack, and sedges, including tussock sedge. Upon returning to the office, the Wetlands Ecologist observed the location of Respondent's property on the National Wetlands Inventory map, and concluded that it was a mapped wetland. As a wetland appearing on the National Wetlands Inventory Map, it is a Class Two wetland regulated by the state, unless it is determined not to be a wetland or is reclassified as a Class Three wetland in a proceeding under Section 7 of the Vermont Wetland Rules. The ANR Wetlands Ecologist informed the ANR Environmental Enforcement Officer that Respondent's property contained a Class Two (mapped) wetland.

On June 2, 2004, the ANR Environmental Enforcement Officer hand delivered to Respondent at the property a Notice of Alleged Violation directing him immediately to cease placing fill within the Class Two wetland or its 50-foot buffer zone, and directing him within 60 days either to apply for and obtain a conditional use determination from the ANR Wetlands Office allowing the placement of the fill or to remove the fill already placed. Together with the Notice of Alleged Violation, the ANR Environmental Enforcement Officer provided Respondent with an application for conditional use determination and an ANR conditional use determination handbook.

On June 14, 2004, the ANR Environmental Enforcement Officer again went to Respondent's property and observed that Respondent had placed more fill in the wetland. Respondent stated that he did not intend to apply for the conditional use determination, and that he did not accept the ANR's use of the National Wetlands Inventory Map. Thereafter, the Agency of Natural Resources obtained the emergency order that is the subject of this proceeding.

As of June 23, 2004, when the Environmental Enforcement Officer served the initial emergency order on Respondent, the sign had been removed from the propane tank, and a new chain link dog enclosure had been constructed to the northeast of the house, partially located on the newly-filled land.

When the Vermont Wetland Rules were adopted in 1990, they initially designated as Class Two wetlands all those wetlands that appeared on the National Wetlands Inventory map. Because not all of those mapped wetlands will in fact meet the criteria for classification and protection as Class Two wetlands, the Vermont Wetland Rules provide a procedure in Section 7 for the Water Resources Board to consider petitions to reclassify a wetland to a different classification (such as Class Three which is not regulated) or to determine whether an area shown as a wetland on the National Wetlands Inventory Map is in fact not a wetland, or that its boundaries or its buffer zone should be adjusted, among other things. See Vermont Wetland Rules, Sections 7.1(a), (c), (d) and (e).

Within a Class Two wetland or its buffer zone, many activities (such as those incidental to residential use of the property) are allowed without obtaining Agency approval if they do not involve placing fill in the wetland or dredging material from the wetland. Section 6.2. However, the placement of fill and construction or use of the filled land in a Class Two wetland or its buffer zone does require prior Agency approval. This approval is called a > conditional use determination" and may be granted if the Agency finds that the activity will not have an undue adverse effect on the protected functions of the wetland. Section 8.

In the present case, it is entirely possible that approval could be granted to Respondent for the fill and enclosures that he wishes to place or has already placed on the wetland area[2], under Section 8 of the Vermont Wetland Rules. It is also possible that the wetland or a portion of it would qualify for reclassification as Class Three or that the boundaries of the wetland or buffer zone would qualify for adjustment under Section 7 of the Vermont Wetland Rules. Respondent could apply for approval (a conditional use determination) under Section 8 and reserve his right to apply for the reclassification or boundary adjustment under Section 7 in the event that approval was not granted. However, Respondent was not and is not authorized to place the fill in a mapped Class Two wetland without obtaining that approval or reclassification or boundary adjustment.

The Secretary has made a sufficient showing that, by placing fill in a wetland appearing on the National Wetland Inventory Map, Respondent has placed fill in a Class Two wetland, which is an activity requiring a permit (that is, a conditional use determination under Section 8 of the Vermont Wetland Rules), and that the activity commenced and continued without the required permit.

Based on the findings, conclusions, and reasoning of this decision, pursuant to 10 V.S.A. § § 8008 and 8009, and V.R.C.P. 76(c); it is hereby ORDERED that:

A) Respondent shall immediately refrain from any further placement of fill within the wetland or its buffer zone, and shall refrain from any excavating or draining or engaging in any other activity within the wetland or its buffer zone, other than the allowed uses listed in Section 6.2 of the Vermont Wetland Rules, until or unless he has obtained a conditional use determination for that fill or other activity under Section 8 of those Rules, or has obtained a determination under Section 7 of those Rules reclassifying the wetland to Class Three or changing its boundaries or the boundaries of its buffer zone;

AND

B) Within thirty (30) days from the date this Order is received by Respondent, Respondent shall file a completed application with the Water Quality Division of the Agency of Natural Resources for a conditional use determination seeking approval at least of the fill already placed and the enclosure already built. Respondent may also apply at the same time or later for any additional fill and any additional enclosures he has planned. This application may be filed while reserving Respondent's rights to apply at the same or a later time under Section 7 of the Vermont Wetland Rules for a reclassification of the wetland to Class Three or any change in its boundaries.

Respondent may contact State Wetlands Ecologist Erin Haney, 802-241-3773, (or in writing at the address in the Notice of Alleged Violation) for assistance in completing this application, and should do so well in advance of the application deadline. Respondent may also wish to contact Attorney Gjessing at 802-241-3820 to avoid any problems with carrying out this emergency order, including to facilitate any entry onto his property or to obtain any court order regulating entry onto his property for the purpose of obtaining the Agency's ruling on the application. The parties may agree to the extension of the deadline in this paragraph, or any deadline in the application process, but should inform the Court of any such extension briefly in writing.

If Respondent fails to file the application as required by Paragraph B, the Secretary may apply to the Court for an amendment to this Emergency Order requiring Respondent to prepare and implement a restoration plan for the property. In connection with this order, the Agency shall provide Respondent with a copy of the Vermont Wetland Rules,unless a copy has already been provided to him in connection with this proceeding.

We also note that Respondent, in his request for the hearing in this matter, requested that the Agency apologize for what Respondent characterized as the Environmental Enforcement Officer's " inexcusable behavior," requested that the Agency review its operational policy to avoid any repetition in the future, and requested monetary compensation for that behavior. The statute under which this matter was brought to Environmental Court does not provide for these types of relief sought by Respondent and we therefore make no findings in the present emergency order proceeding regarding the behavior of any of the witnesses. Respondent may if he wishes bring these requests to the attention of the Secretary of the Agency of Natural Resources directly by mail at 103 South Main Street, Waterbury, VT 05671, and may pursue any other administrative relief or relief, if any, in superior court.

Rights of Appeal:

WARNING: this decision will become final if no appeal is requested within 10 days of receipt of this decision. Respondent and the Secretary of the Agency of Natural Resources have a right to appeal this decision. The procedures for requesting an appeal are found in the Vermont Rules of Appellate Procedure (V.R.A.P.) subject to the exceptions in Vermont Rules of Civil Procedure (V.R.C.P.) 76(a)(3) and (d)(5). Within 10 days of receipt of this Order, any party seeking to file an appeal must file the notice of appeal with the Clerk of this Court, together with the applicable filing fee. Questions may be addressed to the Clerk of the Vermont Supreme Court, 111 State Street, Montpelier, VT 05609-0801, (802) 828-3276. An appeal to the supreme court by the secretary operates as a stay of the dissolution of an emergency order; an appeal to the supreme court by the respondent does not operate as an automatic stay of an emergency order. 10 V.S.A. § 8009(f). However, a party may petition the Supreme Court for a stay under the provisions of V.R.C.P. 62 and V.R.A.P. 8.

Done at Barre, Vermont, this 6th day of July, 2004.

_____

Merideth Wright

Environmental Judge

---

Footnotes

1.    Because this report was anonymous, we have not relied upon it for evidence of any facts related to this case.

2.    Respondent's neighbors, the Heiles, own land to the east of Respondent's property, with a right-of-way over a more southerly section of the extraction area or wetland. The question of whether they may qualify for approval of a roadway on that right-of-way is not before the Court in the present case. Nothing about this ruling in the present case in any way affects or impairs their ability to apply for or obtain such approval.